UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ZURICH AMERICAN INSURANCE CO.,<br><br>　　　　　Defendant. | Case No. 3:19-cv-04397-WHO<br><br>**ORDER RE: MENTAL EXAMINATIONS**<br><br>Re: Dkt. No. 41 |

Zurich American Insurance Co. ("Zurich"), the defendant in this age discrimination and wrongful termination case, seeks to conduct several psychological assessments of plaintiff Howard Davis. Davis agrees that Zurich should be permitted to conduct some mental examination but argues that he should not have to submit to two specific assessments. *See* Joint Discovery Letter Brief ("Letter") [Dkt. No. 41]. The two examinations in dispute are the Montreal Cognitive Assessment ("MoCA") and certain parts of the Cognistat assessment. For the reasons that follow, I agree with Davis that administration of those examinations would be, at this point, improper.

Federal Rule of Civil Procedure 35 governs physical and mental examinations during discovery. Under that Rule, courts "may order a party whose mental or physical condition— including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). Such an order "may be made only on motion for good cause." *Id.* 35(a)(2)(A). Accordingly, the party who seeks the examination has the burden of showing that (1) the other party's mental condition is "in controversy" and (2) there is "good cause" to conduct the particular examination. *See Schlagenhauf v. Holder*, 379 U.S. 104, 117–20 (1964). The good-cause standard is more stringent than many other rules applicable to discovery, such as those that require only relevance. *Id.* 117–

1  18.

2        The parties agree that the MoCA and Cognistat are cognitive examinations. Letter 1.
3  They disagree, however, about the scope and purpose of those examinations. Davis argues that the
4  MoCA is "designed to assist health professionals in the detection of mild cognitive
5  impairment[s]." *Id.* 3 (quoting Nasreddine, et al., "The Montreal Cognitive Assessment, MoCA: a
6  brief screening tool for mild cognitive impairment," *J. Am. Geriatrics Soc.* 53 (4): 695–9 (2005))
7  (internal alterations omitted). He contends that Cognistat also tests for cognitive impairments and
8  is used to test for, among other things, Alzheimer's and dementia. *Id.* 4. He cites the official
9  websites of both assessments to support his descriptions. *Id.* 3–4. Zurich, on the other hand,
10 argues that the examinations "are not, as Plaintiff alleged during meet and confer, tests for
11 Alzheimer's, dementia or head trauma." *Id.* 2. Instead, Zurich alleges, they are "aimed at
12 determining potential cognitive functioning deficiencies, including thinking, problem solving,
13 memory and/or attention deficits." *Id.* Zurich also admits that the tests "may also expose
14 symptoms" of conditions such as Alzheimer's and dementia.

15       Davis claims he was terminated due to his age. Zurich requests these examinations
16 because Davis alleges he suffered and continues to suffer emotional distress from this termination
17 for which he will seek damages. *See, e.g.*, Complaint [Dkt. No. 1] ¶ 88. According to Zurich, this
18 contention places Davis's mental state "in controversy." Zurich argues that Davis's emotional
19 distress might be caused, at least in part, by "cognitive health problems," which these
20 examinations might help reveal. Letter 2. Further, Zurich contends that Davis's "behavior
21 suggests to [Zurich's expert] that a cognitive issue may be at play, as Plaintiff mishandled
22 hundreds of pages of paper documents and physical evidence and exhibited communication
23 issues." *Id.* Zurich also argues that whether Davis's emotional injuries stem from cognitive
24 problems is relevant to whether he was able to mitigate those damages or not. *See id.*

25       I conclude that Zurich has not shown good cause to administer these particular
26 examinations to Davis. Zurich is, of course, permitted to conduct appropriate discovery relevant
27 to Davis's emotional damages claims. But it must demonstrate good case for each *individual*
28 mental examination that it seeks. *Schlagenhauf*, 379 U.S. at 117–20. Rule 35 requires showing

more than that an assessment will turn up potentially relevant results. Zurich suggests only that Davis *might* have a cognitive impairment which *might* create or contribute to emotional distress. *See, e.g.*, Letter 2 ("In Dr. Woods's professional opinion, emotional distress *can* be a product or manifestation of cognitive health problems." (emphasis added)). That could be said of any party in any case. Zurich is, consequently, required to show sufficient evidence of a potential cognitive impairment. It has not. The only evidence Zurich submits in the parties' Joint Letter is its expert's opinion that "mishandle[ing] hundreds of pages of paper documents and physical evidence" and unspecified "communication issues" bespeak a cognitive impairment. Zurich does not, however, disclose the basis of its expert's conclusion or the methodology the expert employed. I cannot, based on this conclusory statement alone, permit examinations that would otherwise be far afield from this suit. It is true that Zurich need not now meet the expertise requirements of the Federal Rules of Evidence, but it must submit sufficient evidence of good cause.[1]

The two assessments here are not as narrow as Zurich argues. On the record before me, Davis has presented evidence—primarily the official descriptions of the assessments—that they *do* screen for the precise cognitive problems that Zurich contends they do not. *See id.* 3–4. Zurich has presented no evidence to the contrary, merely unsupported assertions. *See id.* 1–3. These examinations would, therefore, be highly invasive and potentially embarrassing. It appears that Zurich is attempting to use this discovery to fish for cognitive issues, a request that, standing alone, might present its own host of problems. In any event, Zurich has not rested its arguments on that basis here.

Moreover, Davis represents—and Zurich does not dispute—that he has already agreed to a seven-hour general mental health examination. *Id.* 5. Zurich therefore has ample time to probe the nature and provenance of Davis's emotional distress. What it cannot do is require Davis to be examined by a professional for cognitive impairments without adequate evidence. Additionally,

---

[1] If Davis's only objection to the assessments were that they would ultimately be prejudicial at trial, it would not be sufficient during discovery to prevent them from occurring. As explained, that is not Davis's only argument.

1   Davis has already been deposed and asked questions about his emotional distress. *Id.* 4.

2   None of the cases Zurich relies on compels a different conclusion. Most of its cases stand
3   for the proposition that defendants in these type of suits may assess whether they were the cause of
4   the plaintiff's emotional distress. *See id.* 1–2. As explained, Davis will undergo a dedicated
5   medical examination to determine whether and how Zurich caused his alleged distress. And he
6   has already been deposed. The only case that Zurich relies on that deals with cognitive
7   assessments specifically is *Nunez v. Keurig Dr. Pepper, Inc.*, 2019 WL 6170733 (C.D. Cal. Nov.
8   20, 2019). There, however, the plaintiff objected to all mental examinations, with no targeted
9   objection to the cognitive examinations. *See id.*, at *3. As a result, the court in that case made
10  only the generalized determination that mental examinations would be appropriate; it did not
11  analyze whether good cause had been met in the face of a particularized challenge to cognitive
12  testing.

13  Zurich's request for an order compelling these two mental examinations is DENIED.[2]

14  **IT IS SO ORDERED.**

15  Dated: October 13, 2020

William H. Orrick
United States District Judge

---

[2] Because I conclude that Zurich has not demonstrated good cause for the assessments, it is unnecessary to consider whether requiring Davis to undergo these assessments would violate the California Constitution. *See* Letter 4–5.

4